RIVES, J.
The judgment for the plaintiff in this case rests on the single ground “that the defendant had failed to prove that he or those under whom he claimed title, had, within thirty years previous to the date of the plaintiff’s entry, paid any tax on the land in controversy.” It would seem, therefore, to have been supposed by the court that the defendant had no other rights, but those secured to him by the 40th sect, of chap. 86, of the Rev. Code of 1819, p. 330. That section declares, that “no entry or location on any lands within this commonwealth which have been settled thirty years, prior to the date of such entry or- location; and upon which quit rents or taxes can be proved to have been paid at any time within the said thirty years, shall be deemed valid: and any title, which the commonwealth may be supposed to have thereto *is hereby relinquished, ” &c. But the inability of the defendant to protect his title or possession by means of this special statutory .provision, is not decisive of his rights. Tliey spring from a higher source.
The record fails to disclose, with the absolute certainty that might be desired, the identity of the plaintiff’s entry and survey of 9th September, 1842, with the plat of land claimed and held west of Tittle Byrd creek by the defendant. These parcels of land are not clearly shown to be one and the same. The diagrams of the different surveys, while dissimilar, are, however, so far coincident as to show that the patentee could not make his location without including the land, or at least the greater part of it, claimed by the defendant on that side of the creek. Inasmuch, therefore, as it rests with the plaintiff to prove his right of possession, and in the absence of such proof, the finding must be for the defendant, it may be safely assumed that if this fact of identity did not exist, it would have been shown in evidence, and that whatever of doubt is left upon this subject by the comparison of plats, is due to the plaintiff’s concession on the trial, that his patent conflicted with the defendant’s claim. In corroboration of this view, the different surveys, those relied on by the plaintiff as well as the defendant, call in common for certain marked trees; namely, a hickory, white oak, and pointers west of the same creek. I think, therefore, we are justified by the record in assuming that the patent of the plaintiff embraces land held and claimed by the defendant.
This, then, brings us to a consideration of the defendant’s title. That is traced back to July, 1766, when the deeds of James George and Andrew Harrison conveyed to William Harrison two tracts of land separately, which together made 423 acres, which were afterwards, to wit, on the 19th of August, 1771, conveyed by the said *William Harrison to Edward Matthews (the grandfather of the defendant), and the ancestor, from whom the defendant derives his title. The inclusive survey of the lands of Edward Matthews, as they were parceled out under his will to his children, made on the 2d of July, 1811, by Thomas Atkisson, whose plat is in the record, presents, on the western boundry of the land in controversy, very nearly the same outlines with those of the plaintiff’s location; from which fact we are authorized to infer that Edward Matthews in his lifetime held and claimed by the lines now asserted by his grandson.
Under this state of facts, this land, at the date of the plaintiff’s location in 1842, cannot be regarded as waste and unappropriated land, and as such subject to grant by the commonwealth. On the contrary, where the possession has continued for such a great length of time, from 1766 to 1842, a legal presumption arises as against the crown and the commonwealth and claimants under them, that a grant had duly accompanied the first possession, and consequently avoids any subsequent patent. This principle was early settled in this state by the case of Archer, adm’r of Tanner, v. Saddler, 2 Hen. & Mun. 370. It was there settled that a patent or grant for lands, in case of a peaceable and uninterrupted possession of upwards of sixty years, together with the payment of quit rents or taxes, may be presumed to have formerly issued: but in that case, it was held to be the province of the jury, and not of the court, to make that presumption.
The court in that case relied on the authority of the cases there cited from Cowper; and evidently placed the doctrine on grounds of public policy in the settling titles *365 and quieting- possession. Judge Tucker remarked with much significance, ‘ ‘presumptions, in favor of long and peaceable possession, that there has been a grant, must, at *no very long period hereafter, be absolutely necessary to be made, on almost all occasions, in consequence of the operation of our law of descents.” Judge Roane in enumerating the grounds of such a presumption, specially notes “the improbability that at this time of day, lands in that part of the county (Chesterfield) are vacant.” This decision was made in the early part of the century 1808; and it is manifest how much more the reason and necessity of such a rule is applicable to our present circumstances. I think now we might go further and adopt this presumption as a conclusion of law, and engraft it as a canon of the law of real property, and eminently just and serviceable in quieting possession, and establishing titles to lands, so long settled and enjoyed as those in the eastern part of this state. This has been done in the state of North Carolina. In the case of Bullard v. Barksdale, 11 Ired. Ivaw R. 461, where a possession of forty-seven years was relied on for a presumption of title ; and where there was reason, from the confession of the party, to believe that no actual grant had been made him, it was held to be error to submit the question to the jury on the evidence, as one of fact to be found by them according to the weight they might give to the circumstances, as evidence to their minds; but that on the contrary, the jury should presume a grant, and that, as a conclusion of law, and not a matter of fact.
Many instances of similar presumptions, springing from the lapse of time, the probable loss of evidence, and motives of public policy, are made in behalf of ancient deeds, missing links of title, &c. as in the cases of Caruthers v. Eldridge’s ex’or, 12 Gratt. 670, and Goodwin v. McCluer, 3 Gratt. 291. These presumptions are eminently reasonable and salutary, and necessary to *protect landed possessions from the designs of litigious speculators. The same course of decisions exists in other states. In South Carolina, a presumption of a grant will arise from a possession for thirty and probably for twenty years; McClure v. Hill, 2 Const. L. R. 420; and in Tennessee, a possession for twenty years will avail to the same end. Gilchrist v. McGee, 9 Yerg. R. 455.
Tried by these principles, the case of the defendant does not rest, as the court below seemed to suppose, upon his ability to avail himself of the statute, to which the court had reference ; but rather upon the fact that he was entitled by presumption of law to occupy the relation to the plaintiff of an elder patentee from the crown; that the title of the crown or the commonwealth was to be considered as divested in favor of the claimant whose title and possession, as far as traced, ran back for more than seventy years. While, therefore, if this were to be treated as vacant land, no time could bar the commonwealth or its grantee; and even this possessory action could be maintained within three years of the date of the patent as against any occupier of such land, it is altogether different, when it is proven as here, that the land was not vacant, but had been held under claim of title in peaceable and uninterrupted possession for seventy years before the plaintiff’s entry and location. This is virtually a contest between a junior grantee with his patent in his hand, and an elder grantee, whose title is not the less real and valid, because created by presumption of law, which stands in stead and fulfills all the purposes of an actual grant.
For these reasons, I hold the case on its merits to be for the defendant; and consider the plaintiff, under the actual circumstances of this long continued possession by the defendant, debarred from a resort to the writ of unlawful ^detainer, which consisted only with his theory of this being vacant land. I am, therefore, of opinion that the judgment should be reversed, and entered for the defendant.
The other judges concurred in the opinion of Rives, J.
Judgment reversed; and entered for the defendant.